# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NEWPORT NEWS DIVISION

| | |
|---|---|
| IN RE R&B CORPORATION OF VIRGINIA d/b/a CREDIT CONTROL CORPORATION, DATA SECURITY BREACH LITIGATION | Civil Action No. 4:23-cv-00066-JKW-RJK<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND BRIEF IN SUPPORT

Plaintiffs Veronica Huamani, Christina Pearson, Shiree Lackland, Stephanie Moxley, Douglas Monson, Merrette Blake, Jason Powers and Michele Van Moppes, ("Plaintiffs"), by and through their undersigned counsel, hereby move this Court to:

1.  Preliminarily approve the settlement described in the "Settlement Agreement" between Plaintiffs and Defendant R&B Corporation of Virginia d/b/a Credit Control Corporation ("R&B" or "Defendant"), and the attachments thereto, including the Summary Notice, the Long Notice, the Claim Form, the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, and the [Proposed] Final Approval Order, attached to the Declaration of Gary M. Klinger, filed herewith in support of this Motion;

2.  Conditionally certify the Settlement Class;

3.  Appoint Plaintiffs as Settlement Class Representatives;

4.  Appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, Bryan L. Bleichner of Chestnut Cambronne PA, and Benjamin F. Johns of Shub & Johns LLC, as Settlement Class Counsel;

5.  Approve a customary short form notice to be mailed to Settlement Class Members (the "Summary Notice") in a form substantially similar to that attached as Exhibit E to the Settlement Agreement;

6.  Approve a customary long-form notice (the "Long Notice") to be posted on the Settlement Website in a form substantially similar to the one attached as Exhibit C to the Settlement Agreement;

7.  Direct Notice to be sent to the Settlement Class Members in the form and manner proposed as set forth in the Settlement Agreement and Exhibits E and C thereto;

8.  Appoint Kroll, LLC ("Kroll") as Claims Administrator;

9.  Approve the use of a Claim Form substantially similar to that attached as Exhibit A to the Settlement Agreement; and

10. Set a hearing date and schedule for final approval of the Settlement and consideration of Settlement Class Counsel's motion for award of fees, costs, expenses, and service awards.

This Motion is based upon: (1) this Motion; (2) the Declaration of Gary M. Klinger, filed herewith; (3) the Settlement Agreement; (4) the Notices of Class Action Settlement (including the Long Notice and Summary Notice); (5) the Claim Form; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the [Proposed] Final Approval Order and Judgment; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion The proposed settlement is fair, reasonable, and adequate, and meets all the criteria for preliminary approval under the Federal Rules of Civil Procedure. In support of this Motion, Plaintiffs hereby submit the following Brief in Support.

## <u>TABLE OF CONTENTS</u>

Table of Authorities ......................................................................................................... iv

I.  INTRODUCTION ..................................................................................................... 1

II. CASE SUMMARY .................................................................................................... 2
    A.  The Data Security Incident ................................................................................ 2
    B.  Procedural Posture............................................................................................. 4
    C. History of Negotiations ....................................................................................... 5

III. SUMMARY OF SETTLEMENT ............................................................................ 5
    A. Settlement Benefits ............................................................................................ 6
        1. Reimbursement for Actual Out-of-Pocket Losses
        ("Documented Loss Payments") ................................................................. 6
        2. Alternative Cash Payments ......................................................................... 7
        3. Security-Related Improvements................................................................... 7
    B. Class Notice and Settlement Administration...................................................... 8
    C. Attorneys' Fees and Expenses ........................................................................... 9
    D. Service Awards to Named Plaintiffs .................................................................. 9
    E. Release ............................................................................................................... 9

IV. LEGAL AUTHORITY ............................................................................................ 10

V.  THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR
    CERTIFICATION .................................................................................................. 11
    A. The Rule 23(a) Requirements are Satisfied...................................................... 12
    B. The Rule 23(b)(3) Requirements are Satisfied ................................................ 14

VI. THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND DIRECT
    NOTICE TO THE SETTLEMENT CLASS........................................................... 16
    A. The Class Was Adequately Represented .......................................................... 17
    B. The Proposed Settlement Was Negotiated at Arm's Length .............................. 18
    C. The Relief is Fair, Reasonable, and Adequate ................................................. 18
        1. The Costs, Risks, and Delay of Trial and Appeal...................................... 19
        2. The Method of Distributing Relief is Effective .......................................... 21
        3. The Terms Relating to Attorneys' Fees are Reasonable.............................. 22
        4. Any Agreement Required to Be Identified Under Rule 23(e)(3) ................ 23
    D. The Proposed Settlement Treats Class Members Equitably ........................... 23

VII. THE PROPOSED SETTLEMENT ADMINISTRATOR WILL PROVIDE
    ADEQUATE NOTICE ............................................................................................ 24

VIII. THE COURT SHOULD APPOINT CLASS COUNSEL ...................................... 25

IX.  CONCLUSION....................................................................................................... 26

## **TABLE OF AUTHORITIES**

### **CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................................... 11, 14

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ........................ 13

*Brown v. Transurban USA, Inc.*, 318 F.R.D. 567 (E.D. Va. 2016) .............................................. 17

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) ............................................................. 13

*Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299 (4th Cir. 2013) .............................................. 14

*Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D.
    Colo. Dec. 16, 2019) ............................................................................................................... 19

*Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698 (4th Cir. 2011) ............................................. 15

*Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL
    1274376 (C.D. Cal. Sept. 24, 2014) ....................................................................................... 21

*Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..... 20

*Hapka v. CareCentrix, Inc.*, 2018 WL 1871449 (D. Kan. Feb. 15, 2018)..................................... 15

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D.
    Md. July 15, 2019) .................................................................................................................. 12

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018).................. 12, 13, 15, 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) .... 20

*In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1059
    (S.D. Tex. 2012) ..................................................................................................................... 15

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ............................................................ 17

*In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798 (E.D. Va. Sept.
    23, 2015) .................................................................................................................................. 18

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351 (N.D. Ga.
    Aug. 23, 2016) ........................................................................................................................ 15

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009)............................................. 17

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017),
    reversed in part, 928 F. 3d 42 (D.C. Cir. June 21, 2019) ....................................................... 20

*In re: Capital One Consumer Data Sec. Breach Litig.*, MDL No. 1:19md2915 (AJT/JFA),
    (E.D. Va. February 7, 2022) ................................................................................................... 11

*In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*,
    No.115MD2627AJTTRJ, 2020 WL 5757504 (E.D. Va. Sept. 4, 2020)................................ 23

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices &
    Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) ................................................................... 18

*Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320 (E.D. Va. 2003).................... 12

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................. 24

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429 (11th Cir. 2012)............................. 19

*Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439
    (S.D. Cal. Feb. 29, 2016) ........................................................................................................ 21

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .............................................................. 25

*Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D.
    Ala. Mar. 17, 2017)................................................................................................................. 21

*Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183 (E.D. Va. 2015) ........................................ 14

*Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010)............................................. 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 12

## OTHER AUTHORITIES

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992) ........................ 10
7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779
   (3d ed. 2005) ....................................................................................................................... 15
*Manual for Complex Litigation (Fourth)* § 21.632 (2004) .................................................. 10, 24
The *Manual for Complex Litigation (Fourth)* § 21.632 (2004) ................................................... 10

## RULES

Fed. R. Civ. P. 23 ........................................................ 9, 10, 11, 13, 14, 16, 17, 18, 23, 24, 25, 26
Fed. R. Civ. P. 56 ...................................................................................................................... 20

**BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

This class action arises out of Defendant R&B Corporation of Virginia d/b/a Credit Control Corporation ("R&B" or "Defendant") alleged failure to safeguard the personally identifiable information ("Personal Information") that it maintained regarding Plaintiffs Veronica Huamani, Christina Pearson, Shiree Lackland, Stephanie Moxley, Douglas Monson, Merrette Blake, Jason Powers and Michele Van Moppes (collectively, "Plaintiffs," and, together with Defendant, the "Parties") and Settlement Class Members.[1] Plaintiffs allege that a data security incident was discovered on or about March 7, 2023 and that R&B was the target of a criminal cyberattack in which the attackers accessed and extracted certain personal data, including names, addresses, and Social Security numbers, and information relating to the underlying accounts between individuals and R&B's business customers ("Data Security Incident"). R&B began notifying impacted individuals about the Data Security Incident on or about May 13, 2023, and sent notification of the Data Security Incident to approximately 731,744 individuals. Plaintiffs allege to be among the group of individuals to whom R&B sent a notification.

The Parties engaged in numerous settlement discussions and have exchanged information regarding the Data Security Incident, including the size of the Settlement Class. After extensive discussion and protracted arms-length negotiations, including a mediation session, the Parties have reached a settlement that is fair, adequate, and reasonable. Plaintiffs strongly believe the settlement is favorable to the Settlement Class.

---

[1] The capitalized terms used in this Motion shall have the same meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

1

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move the Court for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement (attached as **Exhibit 1**), and approving the content and manner of the proposed notice process. Accordingly, and relying on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"), the Declaration of Plaintiffs' Counsel Gary M. Klinger ("Klinger Decl.") (attached as **Exhibit 2**), and attached exhibits filed herewith, Plaintiffs respectfully request the Court preliminarily approve the Parties' Settlement Agreement, and issue the [Proposed] Order Granting Preliminary Approval Of The Class Action Settlement, attached to Settlement Agreement, as Exhibit D.

## II.    CASE SUMMARY

### A.    The Data Security Incident

In their Amended Consolidated Class Action Complaint (ECF No. 25), Plaintiffs make the following allegations. "R&B is a debt collection agency that specializes in healthcare, utility, and commercial collections." Amended Consolidated Class Action Complaint ("AC") ¶ 2. In the ordinary course of business, Defendant collects Personal Information from consumers, including Plaintiffs. Because of the nature of the information Defendant collects, they are required to adhere to the laws, rules, and regulations of HIPAA. *Id*. ¶ 36. Defendant also publicly acknowledges these obligations on its website, where it promises, among other things, that in order "[t]o provide even more assurance, an independent firm conducts an annual SOC audit to attest that Defendant's internal controls are suitably designed and operating effectively. With these safeguards and a $5M cyber-liability insurance policy, our clients can take comfort that customers' protected information is safe on our network."[2] By obtaining, collecting, using and deriving benefits from Plaintiffs and

---

[2] https://creditcontrol.net/about-us/

Class Members' Personal Information, R&B assumed legal and equitable duties and knew or should have known that it was responsible for protecting said Personal Information from unauthorized disclosure. *Id.* ¶ 38-43.

Plaintiffs allege that R&B experienced a targeted cybersecurity incident that was discovered on March 7, 2023. *Id.* ¶ 51. Following the incident, Defendant ultimately determined that there had been a data breach involving Plaintiffs' and Class Members' Personal Information, and that an unauthorized actor had accessed and exfiltrated the data. *Id.* ¶ 51. According to Defendant, the Personal Information accessed and stolen in the Data Security Incident included names, addresses, Social Security numbers and information relating to the individual's account(s) with their business, partner(s), such as account numbers, balances, and date of service. *Id.* ¶ 55. R&B sent Plaintiffs notice of the Data Security Incident, beginning on May 13, 2023, informing them that their PII was accessed and exfiltrated by cybercriminals in the Data Security Incident.

Plaintiffs and the Settlement Class Members allege that they relied on R&B to keep their Personal Information confidential and securely maintained and to use this information for business purposes only and to make only authorized disclosures of this information. *Id.* ¶ 45. Plaintiffs allege that R&B's wrongful actions and/or inaction and the resulting Data Security Incident caused them to suffer injuries, including, but not limited to, the following: (a) theft of Plaintiffs' valuable Personal Information; (b) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiffs' Personal Information being placed in the hands of cyber criminals; (c) damages to and diminution in value of Plaintiffs' Personal Information that was entrusted to Defendant with the understanding that Defendant would safeguard this information against disclosure; (d) loss of the benefit of the bargain made with Defendant by overpaying for services that were intended to be accompanied by adequate data security but were not; (e) loss of

time and effort that Plaintiffs have had to expend in an attempt to ameliorate, mitigate, and address the consequences of the Data Security Incident with such steps being taken at the direction of Defendant; and (f) continued risk to Plaintiffs' Personal Information, which remains in the possession of Defendant. R&B denies any wrongdoing or liability.

### B.    Procedural Posture

Beginning on May 23, 2023, several putative class action lawsuits were filed in this Court against R&B related to the Data Security Incident. on July 20, 2023, the Court issued an order consolidating the various actions related to the Data Security Incident pursuant to Fed. R. Civ. P. 42 and appointing Bryan L. Bleichner of Chestnut Cambronne PA, Benjamin F. Johns of Shub & Johns LLC, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as interim co-lead Plaintiffs' counsel pursuant to FED. R. CIV. P. 23(g).  (ECF No. 13).[3] On August 18, 2023, Plaintiffs filed their Amended Consolidated Class Action Complaint. (ECF No. 25). Plaintiffs filed their reply in opposition to Defendant's motion, and Defendant filed a reply in support of their position. (ECF Nos. 32, 44).

With the motion to dismiss fully briefed, the Parties determined that settlement negotiations could be beneficial to both sides. On December 21, 2023, the Parties filed a joint motion to stay these proceedings pending mediation, and on January 24, 2024, this Court granted the motion, staying the case for 75 days and directing the Parties to file a joint status report at the conclusion of the stay.  (ECF Nos. 49, 50). The Parties filed their Joint Status Report on April 4, 2024, informing the Court that the Parties had reached a settlement agreement, and on April 5, 2024, this

---

[3] On August 15, 2023 this Court issued an updated order consolidating an additional case with the others, under the lead case. (ECF No. 24).

Court issued an order giving the Parties 30 days to file a motion for preliminary approval of the Settlement. (ECF Nos. 51,52).

### C. History of Negotiations

After meeting and conferring on multiple occasions regarding the potential for early settlement, the Parties agreed to mediate the case before Bennett G. Picker, Esquire of Stradley Ronon Stevens & Young, LLP. Klinger Decl., ¶¶25-28. Mr. Picker is a mediator with extensive experience in class action mediation generally and data breach mediations in particular. *Id*. In preparation for the scheduled mediation, the Parties exchanged certain confidential information and documents. The Parties also prepared for mediation by laying out their respective positions on the litigation, including with respect to the merits, class certification and settlement, to each other and to the mediator. *Id*. The mediation took place on March 14, 2024, however, the Parties were unable to reach an agreement that day. In the weeks that followed, the Parties continued to engage in hard fought arm's-length negotiations, and ultimately reached an agreement in principle on March 28, 2024. *Id*.

Over the next several weeks, the Parties diligently negotiated, drafted, and finalized the Settlement Agreement, notice forms, and came to an agreement on a claims process and administrator. *Id*. The Settlement Agreement was finalized and signed by the Parties in May 2024. *See* Exhibit 1.

## III. SUMMARY OF SETTLEMENT

The proposed settlement will provide substantial relief to a proposed Settlement Class consisting of: "all natural persons whose Personal Information was compromised in the Data Security Incident." S.A. ¶ 1.42. The Settlement Class specifically excludes: : (1) the judges presiding over the Action and members of their immediate families and their staff; (2) R&B, its

subsidiaries, parent companies, successors, predecessors, and any entity in which R&B or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person. *Id.*

The Settlement Class includes approximately 731,744 individuals. *See* Declaration of Gary M. Klinger ("Klinger Decl."), ¶ 16 attached as **Exhibit 2**.

**A.       Settlement Benefits**

The Settlement negotiated on behalf of the Settlement Class provides for the creation of a Settlement Fund in the amount of $1,613,300.45, which will be used for the payment of the costs of notice and settlement administration, applicable taxes, Plaintiffs' Fee Award and Costs, Service Awards to the Class Representatives, and payments to Settlement Class Members, which will be allocated pursuant to Section 3.7 of the Settlement Agreement as described below. S.A. ¶ 3.2.

1.       Reimbursement for Actual Out-of-Pocket Losses ("Documented Loss Payments")

Class Members may submit a claim for actual out of pocket losses that are more likely than not related to the Data Security Incident and time spent dealing with it (in accordance with the schedule below), cumulatively up to $2,000.00 per individual, and $150,000.00 in the aggregate. If the aggregate amount of valid claims for Documented Loss Payments exceeds $150,000.00 then the payments for those claims will be reduced and paid proportionally to one another out of the $150,000.00 cap for these claims. S.A. ¶ 3.2(a).  Settlement Class Members may make claims for losses more likely than not related to the Data Security Incident incurred through:

> i.   Long distance telephone charges.
>
> ii.  Cell phone minutes (if charged by the minute).
>
> iii. Internet usage charges (if either charged by the minute or incurred solely as a result of the Data Security Incident).

iv.  Costs of credit reports purchased between March 2, 2023 and the Claims Deadline.

v.  Documented costs paid for credit monitoring services and/or fraud resolution services purchased between March 2, 2023 and the Claims Deadline.

vi.  Documented expenses directly associated with dealing with identity theft or identity fraud related to the Data Security Incident.

vii.  Other documented losses incurred by Class Members that are more likely than not related to the Data Security Incident as reasonably determined by the Settlement Administrator.

*Id.*

### 2.  Alternative Cash Payment

In lieu of making a monetary claim for a Documented Loss Payment, Settlement Class Members may submit a claim to receive a flat-fee Alternative Cash Payment. The amount of the Alternative Cash Payment will be determined in accordance with the Plan of Allocation in ¶ 3.7 of the Settlement Agreement after amounts sufficient to pay reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, Service Awards approved by the Court, any amounts approved by the Court for the Fee Award and Costs, Taxes, and Approved Claims for Documented Loss Payments (up to the $150,000.00 cap) have been deducted from the Settlement Fund. Class Members only need to fill out and return a claim form to receive an Alternative Cash Payment; no additional documentation is required. S.A. ¶ 3.2(b).

### 3.  Security-Related Improvements

In addition to the foregoing settlement benefits, R&B implemented additional security controls to enhance its network security. R&B enhanced data segmentation and access controls to limit unauthorized access including: deployment of firewall malware monitoring; implementation of Cloudflare Zero Trust platform to ensure that all network traffic is verified and authenticated and access resources are granted on a least-privilege basis; utilize micro-segmentation to divide

the network traffic into smaller, more secure zones and restrict communication between these zones.

R&B further increased its investment in threat intelligence and security monitoring to detect and respond security events, including: deployment of an advanced threat detection and response system that identifies threats in real time, monitored 24/7 by a security operation center ("SOC"), overlapping endpoint detection and response ("EDR") security agents on devices that operate in the environment; and implementation of SIEM monitoring system which collects and analyzes security events for all devices connected to the environment. S.A. ¶ 2.

These improvements represent a significant benefit to Settlement Class Members, whose information remains in R&B's possession.

### B.    Class Notice and Settlement Administration

The parties have jointly selected the well-regarded and highly experienced settlement administration firm Kroll as the Claims Administrator. *See* Declaration Scott M. Fenwick of Kroll Settlement Administration, LLC in connection with Preliminary Approval of Settlement ("Fenwick Decl.") attached as **Exhibit 3.** Notice will be given to the Settlement Class via individual notice, which will be given by mailing the Summary Notice (attached to the Settlement Agreement at Exhibit E) to the postal addresses of Settlement Class Members. S.A. ¶ 6.3.

A Long Notice (attached to the Settlement Agreement as Exhibit C), and a copy of the Claim Form (attached to the Settlement Agreement as Exhibit A) will also be posted on a Settlement Website established by the Claims Administrator, along with other important documents, such as the Preliminary Approval Order, the Settlement Agreement, the Operative Complaint, and any other materials agreed upon by the Parties and/or required by the Court, such as the motions for final approval and for attorneys' fees and expenses. S.A. ¶ 6.7. The Settlement

Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly. *Id.* The notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. FED. R. CIV. P. 23(c)(2)(B).

The Claims Administrator has estimated that notice and administration costs will total approximately $332,314.00. Kroll Decl., ¶ 18. Notice and claims administration will be paid for from the Settlement Fund. S.A. ¶ 1.25. This is also a benefit to the Settlement Class.

### C.    Attorneys' Fees and Expenses

Plaintiffs will separately seek an award of attorneys' fees not to exceed 1/3 of the Settlement Fund. Plaintiffs will also seek reasonably incurred litigation expenses and costs of up to $50,000.00. Settlement Class Counsel's fee request is well within the range of reasonableness for settlements of this nature and size. S.A. ¶ 9.1.

### D.    Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Plaintiffs will separately petition the Court for awards of $1,250 each (for a total payment of $6,250) in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A. ¶ 8.1. The amount requested here is presumptively reasonable and commonly awarded in settled class actions.

### E.    Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have released and discharged all Released Claims. S.A. ¶ 4.1. "Released Claims" are defined, i*nter alia*, as:

Any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted against a Released Party on behalf of the Settlement Class related to or arising from the Data Security Incident regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are foreseen or unforeseen, suspected or unsuspected, fixed or contingent, or arising out of or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action.

S.A. ¶ 1.36. Released Claims shall include Unknown Claims as defined in ¶ 1.48 of the Settlement Agreement. Released Claims shall not include the right of any Settlement Class Member, Settlement Class Counsel, or any of the Released Persons to enforce the terms of the settlement contained in the Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

## IV.  LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class and certification of the class. *See* FED. R. CIV. P.  23(e)(A)(B)(i)-(ii). The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992) ("*Newberg*"). The *Manual for Complex Litigation (Fourth)* § 21.632 (2004) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria of Rule 23."

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact

common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

## V.  THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION.

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." FED. R. CIV. P. 23(e)(1)(B); *Amchem*, 521 U.S. at 620. Such a decision should not be difficult here. Settlement classes are routinely certified in similar consumer data breach cases, including data breach class actions. *See, e.g., In re: Capital One Consumer Data Sec. Breach Litig.*, MDL No. 1:19md2915 (AJT/JFA)*, Doc. 118 (E.D. Va. February 7, 2022); (Trenga, J.); *Abubaker v. Dominion Dental USA, Inc*., No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va.

Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re: Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. March 17, 2020), aff'd in relevant part 999 F.3d 1247 (11th Cir. 2021), cert. denied sub nom. *Huang v. Spector*, 142 S. Ct. 431 (2021), and cert. denied sub nom. *Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

### A.    The Rule 23(a) Requirements Are Satisfied.

Numerosity: The proposed Settlement Class consists of approximately 731,744 persons across the U.S., indisputably rendering individual joinder impracticable. *See Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

Commonality: "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 "Even a single common question will do." *Id.* at 359 (internal quotations omitted).

Here, all Settlement Class Members suffered the same injury—theft of their personal data in the Data Security Incident—and are asserting the same legal claims. These raise a number of common questions. For example, whether R&B failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. R&B's data security safeguards were common

across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether R&B had a duty to use reasonable care to safeguard Plaintiffs' and Class Members' Private Information;

- Whether R&B failed to use reasonable care to safeguard and protect Plaintiffs and members of the Classes' Private Information from unauthorized disclosure, and;

- Whether proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems to safeguard and protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

These common questions, and others alleged by Plaintiffs in their operative Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23. Accordingly, common questions of law and fact abound. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *11-12; *Anthem*, 327 F.R.D. at 309.

Typicality: Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . ." *Deiter v. Microsoft Corp*., 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc*., 155 F.3d 331, 340 (4th Cir. 1998) (citation and quotations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67.

This requirement is readily satisfied in data breach cases like this one. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the same Data Security Incident and involve the same overarching legal theories.. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12.

Adequacy of Representation: "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Settlement Class Representatives do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. *See passim* Klinger Decl., ¶¶ 3-22; 42-47.

**B.      The Rule 23(b)(3) Requirements Are Satisfied.**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 569 (E.D. Va. 2016).

Predominance: Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Id.* at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs*., 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc*., 444 F. App'x 698, 701–

02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by R&B. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem*, 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Superiority: "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating

the same claims of over 731,744 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315-16.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

## VI.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL AND DIRECT NOTICE TO THE SETTLEMENT CLASS.

When binding absent class members—as contemplated by the Settlement here—the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2)" by finding that the Settlement is "fair, reasonable, and adequate"; and (ii) "certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)-(2). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

16

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

The Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube*: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*.

Evaluation under these enumerated factors confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should issue notice of the Settlement to the Settlement Class.

### A.    The Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 567 (E.D. Va. 2016) (citation omitted). Here, the Settlement Class Representatives have the same interests as other class members as they are asserting the same claims and share the same injuries.

17

Further, Class Counsel has the experience and qualifications to lead this litigation and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Klinger Decl., ¶¶ 25-30, 42-47; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig*., 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### B.    The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the Parties' briefing of numerous legal issues; the length and difficulty of the negotiations; and the involvement of a highly experienced mediator. *See In re NeuStar, Inc. Sec. Litig*., No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations). This factor supports a finding that the Court will likely be able to finally approve the Settlement.

### C.    The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: recovery of up to $2,000 per Class Member for actual out-of-pocket losses, or a pro rata cash payment. S.A. ¶¶ 3.2, 3.7. R&B's agreed Security Commitments are likewise an important benefit flowing to Settlement Class Members, whose sensitive personal information may still reside at R&B.

Class Counsel, a group with a wealth of experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. *See* Klinger Decl., ¶¶ 3-22, 44. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead*

*Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### 1. The Costs, Risk, and Delay of Trial and Appeal

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that R&B's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Operative Complaint. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that R&B asserts a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data incident cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1

(S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses R&B asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. See, e.g., *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was finally announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases  are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data security incident case, establishing causation on a class-wide basis is rife with uncertainty.

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue and is always a risk for the Plaintiffs.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### 2.  The Method of Distributing Relief is Effective**.**

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members and lays out the benefits to which they are entitled.

As an initial matter, noticing the Settlement Class of the available relief will be efficient and effective. The proposed Notice Plan includes dissemination of individual notice by direct mail wherever possible. The total potential Settlement Class size is approximately 731,744 people, and contact information (to provide individual notice) is available for virtually all Settlement Class members. Class Counsel has worked closely with the Settlement Administrator to ensure that the

Notice plan is designed to reach as many Settlement Class Members as practicable. Klinger Decl., ¶¶34-37. Therefore, Settlement Class Members will receive effective and efficient notice of the relief offered.

Because Settlement Class Members may make claims through a simple online form or by mail the method of distributing the relief is both efficient and effective, and the proposed Settlement is adequate under this factor.

        3.  <u>The Terms Relating to Attorneys' Fees are Reasonable</u>.

Class Counsel will request an award of fees an award of attorneys' fees not to exceed 1/3 of the Settlement fund and reimbursement for reasonably incurred litigation costs not to exceed $50,000. The fees will be supported by a lodestar crosscheck. Under the Settlement Agreement, Plaintiffs' request for Attorneys' Fees and Expenses must be filed with the Court at least 14 days before the deadline for Settlement Class Members to opt-out of or object to the Settlement.

In the settlement negotiations, attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the Settlement, including the terms of the Class relief. Klinger Decl., ¶¶ 42-45. The ultimate fee award will be determined in the discretion of the Court based on an application to the Court based on Fourth Circuit law with the opportunity for comment from Settlement Class Members. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. S.A., ¶ 9.4. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses.

Class Counsel will request service awards of $1,250 for each of the Settlement Class Representatives. Service awards of this size are reasonable. *See In re: Lumber Liquidators*

*Chinese-Manufactured Flooring Durability Mktg*., No.115MD2627AJTTRJ, 2020 WL 5757504, at *3 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000). The Settlement Agreement is not conditioned on the Court's approval of this request. S.A., ¶ 8.3. The proposed Settlement is adequate under this factor.

4. <u>Any Agreement Required to Be Identified Under Rule 23(e)(3)</u>**.**

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is adequate. See FED. R. CIV. P. 23(e)(2)-(3). Here, there are no additional agreements. This factor weighs in favor of finding that the Proposed Settlement is adequate

**D.      The Proposed Settlement Treats Class Members Equitably.**

Finally, the proposed Settlement treats all class members equitably relative to each other. FED. R. CIV. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for Documented Losses; this means that monetary compensation will be  apportioned in accordance with each claimant's injury, or a pro rata Alternative Cash Payment.

Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiffs will each be seeking a $1,250 award for their services on behalf of the class, this award is *less than* the $2,000 amount that any given Class Member can claim in reimbursements. This factor likewise supports a finding that the Court will be able to approve the proposed Settlement, and that class notice is appropriate.

## VII.   THE PROPOSED SETTLEMENT ADMINISTRATOR WILL PROVIDE ADEQUATE NOTICE.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint Kroll as the Settlement Administrator and approve the Notice Plan outlined in the Settlement Agreement. The Notice Plan is uncomplicated. R&B will provide to Kroll a Class List within 7 days of the Preliminary Approval Order. S.A. ¶ 6.4. The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the *Manual for Complex Litigation. See* SA Exs. C, E. Here, R&B has agreed to disseminate direct and individual notice, via mail to the last postal address known to R&B for each Settlement Class Member. *See* Klinger Decl., ¶¶ 34-37. The mailing will be completed only after the Settlement Administrator has run the postal addresses of Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS, and any notices returned as undeliverable will either be forwarded where a forwarding address is provided or, if time allows, will be resent after performance of a standard skip trace. *See* Fenwick Dec., ¶12.

In addition to direct notice, all versions of the settlement notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. Id., ¶ 15. The

Settlement Administrator will also make a toll-free telephone number available by which Settlement Class members can seek answers to questions or request a notice or claim form be mailed to them at their address. *Id.* ¶ 16.

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* Agr. Exs. C, E.

When implemented, the Notice Plan will provide the best notice practicable under the circumstances. The Notice apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement). Accordingly, the Notice process should be approved by this Court.

## VIII.  THE COURT SHOULD APPOINT CLASS COUNSEL

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. FED. R. CIV. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. FED.

R. Cıv. P. 23(g)(1)(A)(i–iv). As evidenced by the Klinger Decl., proposed Settlement Class Counsel meets these requirements. The Court should thus appoint Bryan L. Bleichner of Chestnut Cambronne PA, Benjamin F. Johns of Shub & Johns LLC, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC, as Settlement Class Counsel under Rule 23(g). *See* Klinger Decl., ¶ 47.

## IX.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of monetary compensation, identity theft protection, and increased data security safeguards. For these reasons, and for all reasons for certification set forth above, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement.

Date: May 6, 2024

*/s/ David H. Wise*
David Hilton Wise
**WISE LAW FIRM, PLC**
10640 Page Avenue, Ste. 320
Fairfax, VA 22030
Telephone: (703) 934-6377
Fax: 703-934-6379
*dwise@wiselaw.pro*

*/s/ Gary M. Klinger*
Gary M. Klinger
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
*gklinger@milberg.com*
*dlietz@milberg.com*

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*bbliechner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

*/s/ Benjamin F. Johns*
Benjamin F. Johns
Samantha Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge 200 Barr Harbor Drive
Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
Fax: (856) 210-9088
*bjohns@shublawyers.com*
*jshub@shublawyers.com*
*sholbrook@shublawyers.com*

*Co-Lead Counsel for Plaintiffs and the Class*