UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

IN RE R&B CORPORATION OF
VIRGINIA d/b/a CREDIT CONTROL
CORPORATION, DATA SECURITY                 Case No. 4:23-cv-66 (Consolidated)
BREACH LITIGATION

**BENNETT NORTHAM OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT**

Objector, Paul Bennett Northam[1], through below-signed counsel, hereby OBJECTS to the class action settlement in this matter, pursuant to the Order Granting Preliminary Approval of Class Action Settlement, entered July 12, 2024 (ECF 57), and Fed. R. Civ. P. 23(e)(5)(A), for himself and on behalf of similarly situated class members.

## INTRODUCTION

The Parties have requested that the Court approve a class settlement that would release the claims of approximately 731,744 consumers. (ECF 54 at 1). The settlement would provide – after attorney's fees ($537,766.82), litigation expenses ($13,633.82) and service awards ($10,000) and costs of notice and administration ($332,314.00)[2] – very conservative, by Class Counsel's estimates - roughly $719,585.81, or no more than $0.98 per class member.

Although the Court previously granted preliminary approval under the lenient standard applied by some courts at that stage, there is no conceivable way that the proposed settlement satisfies the final approval standard in the Fourth Circuit, where proposed settlements are scrutinized to ensure protection of all class members and to prevent a settlement that does not benefit the Settlement Class as a whole.

---

[1] Paul Bennett Northam objects to the terms of the proposed class action settlement. He lives in Carrollton, Virginia. His class member ID is 83082CKCRFW3K.
[2] The estimate of class notice and administration expense is likely very low as it will assume only a small fraction of class members will ever respond. More typical costs of class administration will exceed $1.00 per class member.

Neither the docket nor the Class Notices – the short form mailed and the long form available at https://www.rbcorpdatasettlement.com/ – provide any basis to believe that the settlement here is fair, reasonable, and adequate, as otherwise required to obtain settlement approval pursuant to Fed. R. Civ. P. 23(e).

The value of the settlement as proffered by Class Counsel is grossly inadequate. At a per class member recovery of $0.98, or even less than $0.50, class notice, and administration will cost more per class member than the amount each class member should recover.

In order to bury that fact, Class Counsel did several things here that warrant further scrutiny and criticism. First, they resorted to a Claims made settlement structure without any basis. Rather than simply mail a payment to each class member as is much more typical of settlements approved in our District, the Parties put the burden on consumers to read a short form notice and then mail a claim. The consumer was required to pay postage costing a decent part of the per person settlement amount – without any idea of the amount he or she will receive. Alternately class members would have to decipher the short notice, find the settlement website and figure out how to find and exercise the claims option online.

The Class Notice also fails. It does not inform any reader how much a class member may receive.

As the case is regarding a debt collector by which class members purportedly have been dunned and contacted for payment, there is no reason to expect the percentage of responding consumers will even reach the paltry 5% claims rate typical of much more substantial settlements.

Finally, why did the Parties settle now? At the time of settlement, there appears to have been no formal discovery. Class Counsel's declarations represent their belief that the case had merit and Rule 11 should require that the allegations be at least sufficient to survive a single Rule 12(b)(6) motion. There is no mention of the Defendant's inability to may a larger sum. And the

lawyers here advocating an embarrassing settlement boast of being part of typical data breach cases yielding tens of millions for consumers.

Lastly – while a percentage of fund recovery is proper in such a case, here Class Counsel takes its percentage not from just the actual common fund to be paid to class members, but as well from the amount to be paid by the Defendant for the costs of Notice and Administration. The result is that the attorney's fees actually recovered will be closer to half – roughly at or greater than 45% – of the common fund and close to equal or greater than the amount net to be paid to class members.

**ARGUMENT**

**I.     Standard of Review.**

This Court can approve the proposed binding class-wide settlement only on a finding that it is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2); *see also Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. No. 3:11-cv-78-HEH., 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) (unpublished). Determination of compliance with Rule 23(e)(2) typically requires a two-part analysis, referred to in this Circuit as the *Jiffy Lube* factors. The Court must determine whether the settlement is "fair and reasonable," and then whether the settlement is "adequate." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The "fairness" prong focuses on the procedural propriety of the proposed settlement agreement and the "adequacy" prong focuses on the substantive propriety of the agreement. *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 305, 315 (D. Md. 1979).

The requirements of Rule 23(e) ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decision of class representatives." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). This proposed settlement was reached before a motion for class certification was filed. The Court's scrutiny under Rule 23 is the fundamental safeguard to ensure the appropriateness of class-wide adjudication. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33

(2013). The importance of this scrutiny is heightened in the settlement context, where the Court must act on behalf of absent class members. MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.61 ("Judicial review must be exacting and thorough."). As a result, when reviewing a proposed class settlement for final approval,[3] the court "must pay undiluted, even heightened, attention to the class certification requirements." *Amchem Prods.*, 521 U.S. at 620; *see also In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 534 (3d Cir.2004) (noting that courts should be "even more scrupulous than usual when examining the fairness of the proposed settlement.").

## II. The Proposed Settlement is Neither Fair, Reasonable, nor Adequate and Cannot be Approved

To determine a settlement's fairness, the Court must consider (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation. *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).

### A. The Posture of the Case is Too Early and the Settlement Provides No Practical Value to Class Members.

At this stage in the litigation, it is premature to settle. The case is in its infancy, with no formal discovery and no significant motions (such as class certification or a Rule 12(b)(6) motion) being addressed. Without the benefit of discovery, the class members have not had the opportunity to fully understand the scope of damages, nor has the defendant's liability been meaningfully explored. The rush to settle without first ensuring a thorough investigation into the claims raises serious concerns about whether this settlement serves the best interests of the class.

---

[3] This Court has addressed the likelihood that the proposed class could be certified for settlement purposes in its decision to preliminarily approve the settlement. *See Preliminary Settlement Approval Memorandum Opinion.* (Doc. No. 420) Jun. 26, 2020 at 2-7. However, "the ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." FED. R. CIV. P. 23(e)(1) advisory committee's note to 2018 amendment. *See also Memorandum Opinion, supra.* at 7 (referring to preliminary certification.) 4 NEWBERG ON CLASS ACTIONS § 13:17 (5th ed.).

4

Further, the proposed recovery of **less than 98 cents per class member** is woefully inadequate. As indicated in the settlement, the net amount available after attorneys' fees, litigation expenses, and administrative costs is approximately **$719,585.81** for **731,744 consumers**.

That estimate assumes a very modest, though open-ended, payment from the consumer fund for costs of notice and administration. The Parties here have assumed exactly what should the Court – very few class members will ever submit claims. The actual estimate and proposal provided by the Administrator and the communications by the Parties seeking bids should be produced to the Court. They very likely suggests an assumption of less than 5% claiming. As below, there is no reason to place this hurdle upon class members. The money, if settled, belongs to every class member, not just those who make a claim. And certainly, the Court should not assume such lack of response in determining adequacy of the settlement. As the undersigned notes in Objector's Counsel's declaration, a low budget for a settlement should be roughly $1.00 per class member. This would be necessary to cover setup, the website design and operation, the postage for notices, the digital or paper check costs including printing, postage and bank fees, profit and payment for the work of the Administrator including for addressing class member contacts, uncashed checks, providing declarations, etc., and postage for those checks mailed back to class members. If the actual cost of a reasonable settlement sending checks to each known class member were transacted, the minimum cost will exceed $730,000. Adding the fees, service awards and costs Plaintiffs seek ($561,400.64), the net available to pay class members would be less than $365,000, amounting to less than $0.50 per class member. This results in a recovery so minimal that it offers no practical value to the individuals affected. Given the *de minimis* amount, it is likely that most class members will not even claim their award due to the time and transaction costs involved in submitting claims for such a trivial payout. This structure only serves to further diminish the effectiveness of the settlement. The undersigned has been lead in most of the

consumer class actions considered for approval in this District.[4] There is no hypocrisy in making this Objection as all of the class settlements advocated followed the same sometimes challenging path and burden suggested by this Objection.

### B. There is No Basis for the Claims-Made Structure and the "Extra Damages" Option is a Charade.

The claims-made structure utilized in this settlement is inappropriate given the facts of the case. There is no uncertainty as to whether a class member has a valid claim – every class member's data was compromised. Rather than automatically distributing payments, the settlement requires class members to submit a claim form. This setup disproportionately benefits the Defendant by reducing the payout, as many class members may not file claims for such a minimal recovery, particularly when the notice did not disclose the exact amount of compensation available.

Moreover, the supposed "extra damages" option – offering up to $2,000 for documented losses – appears to be illusory. In practice, few, if any, class members will be able to prove the specific out-of-pocket losses required to access this relief. Even if some members could, the recovery is capped at a mere $150,000 class-wide, further limiting the potential for meaningful compensation. This cap, which itself confirms the Parties' own belief that less than 75 class member could ever submit such $2,000 damages proof, combined with the difficulty of proving

---

[4] *Pitt v. K-Mart Corp*, 3:11-cv-697 (E.D. Va.); *Ryals v. HireRight Sols., Inc.*, 3:09-cv-625 (E.D. Va.); *Williams v. LexisNexis Risk Mgmt.*, 3:06-cv-241 (E.D. Va.); *Beverly v. Wal-Mart Stores, Inc.*, 3:07-cv-469 (E.D. Va.); *Berry v. LexisNexis Risk & Info. Analytical Grp.*, 3:11-cv-754 (E.D. Va.); *Cappetta v. GC Servs. LP*, 3:08-cv-288-JRS (E.D. Va.); *Henderson v. Verifications, Inc.*, 3:11-cv-514 (E.D. Va.); *Harris v. US Physical Therapy, Inc.*, 2:10-cv-1508 (D. Nev.); *Daily v. NCO Fin.*, 3:09-cv-31 (E.D. Va.); *Lengrand v. Wellpoint*, 3:11-cv-333 (E.D. Va.); *Burke v. Shapiro, Brown & Alt, LLP*, No. 3:14-cv-838 (DJN) (E.D. Va.); *Ridenour v. Multi-Color Corp.*, No. 2:15-cv-41-MSD-DEM (E.D. Va.); *Manuel v. Wells Fargo Nat'l Ass'n*, No. 3:14-cv-238 (E.D. Va.); *Thomas v. FTS USA, LLC*, No. 3:13-cv-825-REP (E.D. Va.); *Milbourne v. JRK Residential Am., Inc.*, No. 3:12-cv-861-REP (E.D. Va.); *Anderson v. Signix, Inc.*, No. 3:08-CV-570 (E.D. Va.); *Ellis v. Swift Transp. Co. of Az.*, 3:13-cv-473 (E.D. Va.); *Shami v. Middle E. Broad., Inc.*, 1:13-cv-467 (E.D. Va.); *Marcum v. Dolgencorp*, 3:12-cv-108 (E.D. Va.); *Wyatt v. SunTrust Bank*, 3:13-cv-662 (E.D. Va.); *Henderson v. HRPlus*, No. 3:14-cv-82 (E.D. Va.); *Henderson v. Backgroundchecks.com*, 3:13-cv- 29 (E.D. Va.); *Henderson v. Acxiom Risk Sols.*, 3:12-cv-589 (E.D. Va.); *Ryals v. Strategic Screening Sols., Inc.*, 3:14-cv-00643-REP (E.D. Va.); *Reese v. Stern & Eisenberg Mid-Atlantic*, 3:16-cv-496-REP (E.D. Va.); *Hayes v. Delbert Servs. Corp.*, No. 3:14-cv-258-JAG (E.D. Va.); *Soutter v. Equifax Info. Servs., LLC*, 3:10-cv-107 (E.D. Va.); *Fariasantos v. Rosenberg & Assocs., LLC*, 3:13-cv-543 (E.D. Va.); *James v. Experian Info. Sols., Inc.*, 3:12-cv-902 (E.D. Va.); *Goodrow v. Friedman & MacFadyen, P.A.*, 3:11-cv-20 (E.D. Va.); *Witt v. CoreLogic SafeRent, LLC*, 3:15-cv-386 (E.D. Va.); *Henderson v. CoreLogic Nat'l Background Data, LLC*, 3:12-cv-97 (E.D. Va.)

such damages, makes the extra damages option a charade that inflates the perceived value of the settlement without offering real benefit.

### C. *The Notice Fails to Inform Class Members of their Actual Cash Recovery.*

The notice sent to class members does not provide sufficient information about the actual cash recovery available. Instead of disclosing the true amount class members can expect – **less than $1 per person** – the notice remains vague, leaving recipients unaware of the minimal payout they would receive if they participated in the settlement. Class members are left to believe that they might receive substantial compensation, when in fact the overwhelming majority will get next to nothing.

For a settlement to be fair and adequate, the notice should have clearly informed the class of the actual monetary recovery they could expect after deductions for attorneys' fees and expenses. By failing to provide this critical information, the notice misleads the class and prevents them from making an informed decision about whether to remain in the class or opt out.

### D. *The Attorney's Fee Requested is Not Commensurate with the Benefits Afforded to the Entire Class.*

As represented above, the requested fee under the terms of the Settlement Agreement would, if awarded, constitute close to 50% of the total cash relief provided for all class members. This is an extraordinarily large percentage of a cash common fund. Typically, attorney's fees as a percentage of a cash common fund hover between 25% and 33%. MANUAL FOR COMPLEX LITIGATION § 14.121. This extremely large percentage of the cash common fund is not justified by the actual benefits accorded to the class.

Any attorneys' fees award should "[c]ompensat[e] counsel for the *actual benefits conferred* on the class members." MANUAL FOR COMPLEX LITIGATION § 21.71. (emphasis added). Courts properly may consider the value of all benefits to the class, monetary and non-monetary. *See Vizcain v. Microsoft Corp.*, 209 F. 3d 1043, 1049 (9th Cir. 2002); *see also Gascho v. Global Fitness*

*Holdings*, 822 F.3d 269, 282–88 (6th Cir. 2016). However, the equitable distribution of those benefits among class members must be real, not illusory or inflated.

When it comes to non-cash relief, courts have an overriding obligation to "scrutinize the value of the non-monetary settlement provisions to determine their true benefit to the class." *Hooker v. Sirius XM Radio, Inc.* No. 4:13-cv-003, 2017 WL 4484258, at *3 (E.D. Va. May 11, 2017). In that regard, courts are encouraged to "look beyond the face-value of non-monetary or contingent benefits." *See* Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, 34 (3d ed. 2010). Here there is no evidence proffered that the supposed non-cash relief has value and should not be valued as the equivalent of cash being offered to all Class Members.

### III. Next Steps

The Court should deny Final Approval and send the Case to the Magistrate Judge for a Settlement Conference.

None of the Parties' counsel nor their out-of-state mediator is experienced in litigation, negotiating or mediating cases like this in this District. Objector's counsel would agree to negotiate this objection for the betterment of the Class and to improve the terms here.

Neither Objector nor Objector's counsel will negotiate in self-interest. As in the last such objection prosecuted by Objector's counsel, Consumer Litigation Associates will agree to donate any fee obtained (if any is sought and awarded) to the Legal Aid Society of Eastern Virginia. *Solomon v. Am. Web Loan, Inc.*, 4:17-cv-00145 (E.D. Va.), ECF 471 (Denying final approval and sending case to E.D. Va. Settlement conference). The Court may also note that Objector's counsel has received multiple awards with regard to its pro-bono work. In 2019, CLA was selected as the co-recipient of the Frankie Muse Freeman Organizational Award – the year's top Pro Bono law firm – by the Virginia State Bar. There are no ulterior motives here.

Respectfully submitted,

**OBJECTOR PAUL BENNETT NORTHAM,**

By: _____/s/_____
Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
Adam W. Short, Esq., VSB # 98844
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: adam@clalegal.com

*Counsel for Objector*