UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| IN RE R&B CORPORATION OF VIRGINIA d/b/a CREDIT CONTROL CORPORATION, DATA SECURITY BREACH LITIGATION | Civil Action No. 4:23-cv-00066-JKW-RJK |

# BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Veronica Huamani, Christina Pearson, Shiree Lackland, Stephanie Moxley, Douglas Monson, Merrette Blake, Jason Powers and Michele Van Moppes ("Plaintiffs") hereby submit the Brief in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement. This Brief is supported by the Declaration of Scott M. Fenwick of Kroll, LLC (**Exhibit 1 to the Memorandum**) ("Fenwick Declaration, ¶1"); the Joint Declaration of Co-Class Counsel in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Class Counsel Decl., ¶1") (**Exhibit 2 to the Memorandum**), and all files, records, and proceedings in this matter.

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................................1

II. INCORPORATION BY REFERENCE..................................................................................2

III. SUMMARY OF ACTION AND SETTLEMENT .................................................................2

    A. Background..................................................................................................................2

    B. Terms of Settlement .....................................................................................................2

IV. PRELIMINARY APPROVAL AND NOTICE......................................................................2

V. THE SETTLEMENT MERITS FINAL APPROVAL BY THE COURT.........................3
    A. The Settlement Meets the Standards for Final Approval Under Rule 23(e)..............3

        1. Fairness ...............................................................................................................5

            a. The Posture of the Case at the Time Settlement Was Proposed ...................5
            b. The Extent of Discovery That Had Been Conducted....................................6
            c. The Circumstances Surrounding the Negotiation .........................................7
            d. The Experience of Counsel............................................................................7

        2. Adequacy ............................................................................................................8

            a. The Relative Strength of the Plaintiffs' Case on the Merits ...........................8
            b. The Existence of Any Difficulties or Proof of Strong Defenses the
               Plaintiffs Are Likely to Encounter if the Case Goes to Trial .........................9
            c. The Anticipated Duration and Expense of Additional Litigation ....................9
            d. The Solvency of Defendant and Likelihood of Recovery on a Litigated
               Judgment ......................................................................................................10
            e. The Degree of Opposition to the Settlement....................................................10

    B. The Notice to Settlement Class Members Was Sufficient .........................................11

VI. CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Boger v. Citrix Sys., Inc.*, 2023 WL 3763974 (D. Md. June 1, 2023) .................................... 12, 14

*Brown v. Transurban USA, Inc.*, 318 F.R.D. 560 (E.D. Va. 2016) ............................................ 5, 8

*Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758 (D. Md. 2022) .............................. 9, 15

*Galloway v. Williams*, 2020 WL 7482191 (E.D. Va. Dec. 18, 2020) .................................... 3, 5, 8

*Haney v. Genworth Life Ins. Co.*, 2023 WL 2596845 (E.D. Va. Feb. 15, 2023) ........................... 11

*Hinkle v. Matthews*, 2018 WL 6004680 (S.D.W. Va. Nov. 15, 2018) ......................................... 6

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) ................................................ 4

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) ....................................................... 4

*In re Novant Health, Inc.*, 2024 WL 3028443 (M.D.N.C. June 17, 2024) .................... 5, 7, 8, 9, 11

*In re Onix Group, LLC Data Breach Litig.*, 2024 WL 5107594 (E.D. Pa. Dec. 13, 2024) .......... 11

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ...................................... 12

*In re Philadelphia Inquirer Data Sec. Litig.*, 2024 WL 4582881 (E.D. Pa. Oct. 25, 2024) ........... 5

*In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 6871635 (E.D. Va. Oct. 18, 2023) ............. 4, 11

*McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) ................................................................... 11

*Pierce v. Statebridge Co., LLC*, 2021 WL 1711784 (M.D.N.C. Apr. 29, 2021) ............................ 5

*Robinson v. Carolina First Bank NA*, 2019 WL 719031 (D.S.C. Feb. 14, 2019) ...................... 8, 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ....................................... 12

**RULES**

Fed. R. Civ. P. 23(e)(1) .................................................................................................................. 4

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................................... 12

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii) ................................................................................................... 3

Fed. R. Civ. P. 23(e)(2) .................................................................................................................. 4

**OTHER AUTHORITIES**

Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action
    Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010) ................................................. 14

Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language
    Guide* (2010) ........................................................................................................................... 14

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Veronica Huamani, Christina Pearson, Shiree Lackland, Stephanie Moxley, Douglas Monson, Merrette Blake, Jason Powers and Michele Van Moppes ("Plaintiffs") move for entry of an order granting final approval of this proposed class action settlement and certifying the settlement class. For the reasons set forth below, Plaintiffs respectfully request that the Court, after the final approval hearing scheduled for January 29, 2025, grant this Motion for Final Approval of Class Action Settlement, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs (ECFs Nos. 59-60), and enter a final judgment dismissing this case.

### I.   INTRODUCTION

Plaintiffs, by and through Class Counsel,[1] on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their Motion pursuant to Federal Rule of Civil Procedure ("Rule 23") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement ("S.A") (ECF No. 54-1) and for the certification of the Settlement Class.

If approved, the Settlement will successfully resolve the claims of 703,897[2] individuals nationwide who were notified of a security incident that Defendant R&B Corporation of Virginia d/b/a Credit Control Corporation ("Defendant") announced on May 15, 2023, June 13, 2023, and August 23, 2023 (the "Security Incident"). The Settlement brings meaningful resolution and

---

[1] The Court appointed (1) Gary Klinger of Milberg Coleman Bryson Phillips Grossman, LLC, (2) Benjamin F. Johns of Shub & Johns LLC, and (3) Bryan Bleichner of Chestnut Cambronne PA.

[2] Class Counsel compiled this final figure following deduplication of the Class Member list.

1

significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Defendant to establish a non-reversionary Qualified Settlement Fund of $1,613,300.45 ("Settlement Fund") for the benefit of eligible Class Members. Defendant has also committed to enhanced data security practices to protect Class Members' Private Information. S.A., ¶ 2.

## II. INCORPORATION BY REFERENCE

Plaintiffs incorporate by reference the Consent Motion for Preliminary Approval of Class Settlement (ECF No. 54) ("Motion for Preliminary Settlement") and the Motion and Memorandum in support of Attorneys' Fees, Reimbursement of Expenses, and Service Award (ECF Nos. 59-60).

## III. SUMMARY OF ACTION AND SETTLEMENT

### A. Background

Plaintiffs provide the factual background, procedural background, and history of negotiations in § II(A)-(C) in the Motion for Preliminary Approval. ECF No. 54, PAGEID 7-10.

### B. Terms of Settlement

Plaintiffs detail the settlement benefits in § III in the Motion for Preliminary Approval. ECF No. 54, PAGEID 10-13.

## IV. PRELIMINARY APPROVAL AND NOTICE

On May 6, 2024, Plaintiffs moved the Court to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 54). On July 12, 2024, the Court granted Plaintiffs' Motion for Preliminary Approval. (ECF No. 23).[3] Pursuant to the Preliminary Approval Order, the

---

[3] On July 31, 2024, the Court reset the final approval hearing for January 29, 2025 at 11:30 a.m.

Settlement Administrator implemented the Notice Plan, disseminating notices to the Settlement Class via U.S. mail. Fenwick Decl., ¶¶ 7, 10-12.

The notice advised Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. S.A., Exs. A, C, E). The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on October 11, 2024. Fenwick Decl., ¶ 16. As of December 20, 2024, 9,212 claim forms were submitted, only three (3) Class Members requested to be excluded from the Settlement, and there are no current objections. *Id*., ¶¶ 16-21.

## V.     THE SETTLEMENT MERITS FINAL APPROVAL BY THE COURT

### A.  The Settlement Meets the Standards for Final Approval Under Rule 23(e)

"Per Federal Rule of Civil Procedure 23(e), a class action may only be settled with the court's approval." *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (Payne, J.) (citing FED. R. CIV. P. 23(e)). "If the settlement proposal would bind all class members, a court may only approve the settlement proposal after it holds a hearing and subsequently finds that the settlement proposal is fair, reasonable, and adequate." *Id*. (citing FED. R. CIV. P. 23(e)(2)).

At the preliminary approval stage, the issue before the Court was whether the parties' proposed settlement and proposal to send notice was "justified by the parties' showing that the court will likely be able to…[grant final approval]; and…certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B)(i)-(ii). The reason for "front-loading" the class action

3

settlement approval process in this manner is because "[t]he decision to give notice of a proposed settlement to the class is an important event." FED. R. CIV. P. 23(e)(1) advisory committee's note to 2018 amendment.

Now, at the final approval stage, the issue before the Court is whether the settlement is fair, reasonable and adequate. The factors relevant to this determination are whether:

(A.) the class representatives and class counsel have adequately represented the class;

(B.) the proposal was negotiated at arm's length;

(C.) the relief provided for the class is adequate, taking into account:

　　i. the costs, risks, and delays of trial and appeal;

　　ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

　　iii. the terms of any proposed award of attorneys' fees, including timing of payment; and

　　iv. any agreement required to be identified under Rule 23(e)(3); and

(D.) the proposal treats class members equitably relative to each other.

*Id.* (citing FED. R. CIV. P. 23(e)(2)).

"Nevertheless, '[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations.'" *Id.* (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). "In the Fourth Circuit, the Rule 23(e) (2) analysis has been condensed into the two-step Jiffy Lube test which examines the fairness and adequacy of the settlement." *Id.* (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009)); *see, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2023 WL 6871635, at *3-6 (E.D. Va. Oct. 18, 2023) (Smith, J.) (applying the *Jiffy Lube* test in granting final approval).

4

1. <u>Fairness</u>

"Under the fairness prong of the *Jiffy Lube* test, the court must assess the procedural fairness of the settlement negotiations." *Galloway*, 2020 WL 7482191, at *3 (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 254). "The relevant factors to evaluate the fairness of the settlement negotiations are '(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel.'" *Id*. (quoting *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016)).

a. *The Posture of the Case At the Time Settlement Was Proposed*

Following briefing on the Motion to Dismiss (ECF Nos. 29 and 32), the parties exchanged informal discovery to assess the merits of each other's positions and proceeded to mediation with renowned mediator Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. Mr. Picker has been recognized by district courts as a "experienced mediator" in the data breach field. *See e.g.,* <u>In re Philadelphia Inquirer Data Sec. Litig.</u>, No. CV 24-2106-KSM, 2024 WL 4582881, at *1 (E.D. Pa. Oct. 25, 2024). Through informal discovery, the parties had a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. Class Counsel Decl., ¶7. This supports the fairness of the settlement. *See, e.g., In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443, at *6 (M.D.N.C. June 17, 2024) (deeming this factor satisfied where the parties negotiated a settlement while the court was evaluating a second motion to dismiss); *Pierce v. Statebridge Co., LLC*, No. 1:20CV117, 2021 WL 1711784, at *2 (M.D.N.C. Apr. 29, 2021) (deeming this factor satisfied where "Plaintiff's Counsel and Defendant's Counsel are both experienced in complex litigation,

including class action litigation" and "had 'a clear view of the strengths and weaknesses' of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement") (citation omitted); *Hinkle v. Matthews*, No. 2:15-CV-13856, 2018 WL 6004680, at *2 (S.D.W. Va. Nov. 15, 2018) (deeming this factor satisfied where "Plaintiff's Counsel and Defendant's Counsel, who are both experienced in prosecuting complex class action claims such as these, had 'a clear view of the strengths and weaknesses' of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.") (citation omitted).

### b. *The Extent of Discovery That Had Been Conducted*

Prior to the filing and during this Action, Class Counsel investigated information available online related to the Security Incident, including reviewing reports that Defendant filed with various authorities related to the Security Incident. Class Counsel Decl., ¶ 7. Prior to mediation, Plaintiffs requested and obtained from Defendant information about (i) the number of persons impacted by the Security Incident; (ii) the types of information impacted by the Security Incident; (iii) how Defendant acquired the information; (iv) whether the information was encrypted; (v) the forms in which Defendant notified impacted persons of the Security Incident; (vi) how and when the Security Incident occurred, including the technical details and the identity of the perpetrator; (vii) whether forensic reports were prepared; (viii) Defendant's communications with law enforcement related to the Security Incident; (ix) the extent to which impacted persons took advance of Defendant's offer to provide complimentary identity monitoring; (x) Defendant's efforts to address the Security Incident, including any remediation of Defendant's systems; (xi) Defendant's efforts to monitor for misuse of the information; (xii) Defendant's communications with the perpetrator; and (xiii) Defendant's insurance coverage information. *Id*. This supports the

fairness of the settlement. *See, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where the case settled before formal discovery but the defendant disclosed information about data sharing to impacted individuals and authorities, class counsel gathered publicly available information, the defendant provided contact information for class members to the settlement administrator, and the parties engaged in limited, informal discovery for settlement purposes).

    c. <u>The Circumstances Surrounding the Negotiation</u>

  The parties mediated this case before Mr. Picker on March 14, 2024. Class Counsel Decl., ¶¶ 8-10. While the mediation was productive and resulted in the Parties narrowing some of the disputed issues, they were unable to reach an agreement that day. In the weeks that followed, the Parties continued to engage in hard fought arm's-length negotiations, and ultimately reached an agreement in principle on March 28, 2024. *Id*. Over the next several weeks, the Parties diligently negotiated, drafted, and finalized the Settlement Agreement, notice forms, and came to an agreement on a claims process and administrator. *Id*., ¶ 11. The Settlement Agreement was finalized and signed by the Parties in May 2024. *See* S.A. This supports the fairness of the settlement. *See, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where "[m]ediation was conducted by an independent mediator and was a collaborative process").

    d. <u>The Experience of Counsel</u>

  As explained in the Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (filed with the preliminary approval motion, ECF No. 54-2, ¶ 44), Class Counsel are abundantly qualified and experienced. Class

7

Counsel unequivocally state the S.A. is a fair, reasonable, and adequate result. Class Counsel Decl., ¶¶ 11-12. This supports the fairness of the Settlement.

2. Adequacy

"Under the adequacy prong of the *Jiffy Lube* test, the court assesses the substantive adequacy of the settlement agreement." *Galloway*, 2020 WL 7482191, at *4 (citing *Brown*, 318 F.R.D. at 571). "The relevant factors to evaluate the adequacy of the settlement are '(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.'" *Id*. (quoting *Brown*, 318 F.R.D. at 573).

a. The Relative Strength of the Plaintiffs' Case on the Merits

Because the law surrounding data breaches is still developing, it is challenging to evaluate the likelihood of Plaintiffs prevailing at trial. Moreover, Plaintiffs' claims have not been tested through litigation discovery and dispositive motions. This supports the adequacy of the settlement. *See, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 ("The law surrounding data privacy and the surreptitious sharing of user data is still developing, making it challenging for the parties to evaluate the likelihood of prevailing at trial."); *Robinson v. Carolina First Bank NA*, No. 7:18CV-02927-JDA, 2019 WL 719031, at *10 (D.S.C. Feb. 14, 2019) (deeming this factor satisfied where "Defendant has not had the opportunity to test Plaintiff's legal claims through litigation discovery and dispositive motions").

8

      b. *<u>The Existence of Any Difficulties of Proof or Strong Defenses the Plaintiffs are Likely to Encounter If the Case Goes to Trial</u>*

  Here, there is no dispute that the Security Incident occurred. Regarding difficulties of proof as to other issues in this action, such as whether or not the Security Incident resulted from Defendant's negligence and whether or not Plaintiffs' alleged damages are cognizable under applicable law, it is simply unknown how future litigation may have impacted the quality of the Settlement. *See Robinson*, 2019 WL 719031, at *10 (analyzing this factor and reasoning that "while Plaintiff is confident in the strength of her case, it is unclear to what extent litigation may present issues that underscore the desirability of this settlement").

      c. *<u>The Anticipated Duration and Expense of Additional Litigation</u>*

  Had this action not settled, the parties would likely have litigated a motion to dismiss. If the motion to dismiss were not granted, the parties would have engaged in discovery, including expert discovery, followed by motions for class certification and summary judgment. If a class were certified and summary judgment denied, the action would have proceeded to and through trial. Given the rapidly evolving law in data breach cases, and that no data breach cases have been tried to date (to the knowledge of Class Counsel), it is reasonably possible that an appeal would have followed. Simply put, to continue this action to its end would have taken years and required substantial expense. This supports the adequacy of the settlement. *See, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where "lengthy discovery, including the deposing of expert witnesses on damages, motions for summary judgment, and a motion for class certification would occur before final resolution could take place"); *Feinberg*, 610 F. Supp. 3d at 768 (deeming this factor satisfied where "the risk of appeal—and its attendant costs—was particularly acute in a case, such as this one, that presents a novel question"); *Robinson*, 2019 WL 719031, at *10 (deeming this factor satisfied where "a case such as this, a fully contested class

9

action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals. Likewise, the expenses for such a complex case, to include the completion of merits and expert discovery, class certification briefing, dispositive motions, trial, post-trial motions, and possible appeals would entail substantial expenses for all parties").

    d. *The Solvency of Defendant and Likelihood of Recovery on a Litigated Judgment*

The Parties exchanged informal discovery regarding Defendant's solvency prior to and during mediation. Class Counsel Decl., ¶ 7. Specifically, Defendant provided its applicable insurance coverage (*i.e.*, a wasting policy) which was almost entirely exhausted through the funding of this Settlement and the costs of defense. *Id*. Class Counsel avers that additional litigation would have not led to a better settlement and opines the contrary is more likely to happen – subsequent costs of defense would have drained Defendant's insurance coverage and led to a smaller recovery. *Id*., ¶ 14.

    e. *The Degree of Opposition to the Settlement*

Of the 703,879 individuals in the Settlement Class, there have only been three requests for exclusion filed. Fenwick Decl., ¶¶ 20-21. The sole objection (ECF No. 61) was withdrawn and clarified as follows:

> Class Counsel has provided additional information to Leaonard A. Bennett, as counsel for Mr. Northam, clarifying the factors underlying the settlement and the motion for final approval. Based on the new information provided, Mr. Northam fully supports the settlement.
>
> Additionally, Mr. Bennett, as an experienced class action counsel in the Eastern District of Virginia, considers the settlement fair and reasonable and separately supports its approval based on his practice experience and evaluation of the settlement's terms and the information provided to him by Class Counsel.

10

> Neither objector or his class counsel is negotiating or receiving any payment in connection with the objection or withdrawal of objection.

ECF No. 62, PAGEID 677.

This reflects a low degree of opposition to the settlement, supporting the adequacy of the settlement. *See, e.g., In re Novant Health, Inc.*, 2024 WL 3028443, at *6 (deeming this factor satisfied where thirty-seven (37) of over 1.3 million class members sought exclusion and none objected); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 6871635, at *2 n.3, 5 (deeming this factor satisfied where sixteen (16) class members timely sought exclusion and none objected); *Haney*, 2023 WL 2596845, at *3 (deeming this factor satisfied where 190 of 350,000 class members sought exclusion and thirty-one (31) initially objected). In any event, to the extent that the now-withdrawn objection had criticized the settlement on the basis "that the settlement should have been better [, this argument] has been frequently rejected by courts." *In re Onix Group, LLC Data Breach Litig.,* No. CV 23-2288-KSM, 2024 WL 5107594, at *11 (E.D. Pa. Dec. 13, 2024) (collecting cases).

### B. The Notice to Settlement Class Members was Sufficient

"[T]he adequacy of the notice [of a class action settlement] has both a constitutional and a procedural component." *McAdams v. Robinson*, 26 F.4th 149, 157 (4th Cir. 2022). "To bind an absent class member, notice to the class must provide 'minimal procedural due process protection.'" *Id*. (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)). "'The [absent class member] must receive notice plus an opportunity to be heard and participate in the litigation.'" *Id*. (quoting *Philips Petroleum Co.*, 472 U.S. at 812). "That notice must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

11

"On the procedural front, Federal Rule of Civil Procedure 23(e) governs notice to absent class members." *Id*. "It requires 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Id*. (quoting FED. R. CIV. P. 23(e)(1)(B)). "But it doesn't specify what the notice must say." *Id*. "Rather, the notice need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id*. (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). "Put another way, 'Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id*. (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015)).

Here, the notice "provided Class Members with, among other things, details regarding the nature of this lawsuit, the terms of the Settlement Agreement, the release of all claims under both state law and federal law, information regarding objecting to the proposed settlement, and the fairness hearing." *Boger v. Citrix Sys., Inc.*, No. 19-CV-01234-LKG, 2023 WL 3763974 (D. Md. June 1, 2023) (approving notice).

The notice was issued in the manner outlined in the Preliminary Approval Order. *See* Fenwick Decl. *passim*. On April 29, 2024, Kroll designated a post office box with the mailing address *In Re R&B Corporation of Virginia d/b/a Credit Control Corporation,* c/o Kroll Settlement Administration LLC, PO Box 225391, New York, NY 10150-5391, in order to receive Requests for Exclusion, Claim Forms, objections, and correspondence from Class Members. *Id*., ¶ 5. On July 18, 2024, Kroll established a toll-free telephone number, (833) 383-3353, for Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system and by being connected to a live operator. As of December 20,

2024, the IVR system has received 434 calls, and ninety-two (92) callers have been connected to live operators. *Id*., ¶6. On July 18, 2024, Kroll received one (1) data file from the Defendant. This file contained 728,751 names and mailing addresses for Class Members. Kroll undertook several steps to compile the eventual Settlement Class List for the email and mailing of Summary Notices. *Id*. ¶ 7. This included deduping and standardizing addresses in the data file received, which resulted in the file containing 703,897 names and mailing addresses. *Id*. Following this, Kroll performed a search on the 703,897 records to locate 454,684 email addresses for Class Members. *Id*. Additionally, in an effort to ensure that Summary Notices would be deliverable to the 249,213 Class Members for whom an email address was not located, Kroll ran the Settlement Class List through the USPS's National Change of Address ("NCOA") database and updated the Settlement Class List with address changes received from the NCOA. *Id*.

On July 19, 2024, Kroll created a dedicated Settlement Website entitled www.rbcorpdatasettlement.com. The Settlement Website "went live" on August 2, 2024, and contains a summary of the Settlement, important dates and deadlines such as the Final Approval Hearing date, Claims Deadline, Objection Deadline, and Request for Exclusion deadline , contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Claim Form, Settlement Agreement, Preliminary Approval Order, the operative Consolidated Class Action Complaint, and Long Form Notice, and allowed Class Members an opportunity to file a Claim Form online. *Id*., ¶ 8. On August 14, 2024, Kroll established an email address, info@rbcorpdatasettlement.com, to receive and reply to email inquiries from Class Members pertaining to the Settlement. *Id*., ¶ 9.

On August 2, 2024, Kroll caused 249,213 Summary Notices to be mailed via first-class mail. *Id*., ¶ 10. At the direction of counsel for the Parties ("Counsel"), on August 2, 2024, Kroll

13

caused the Summary Notice to be sent via email ("Email Notice") to the 454,684 email addresses on file for Class Members. *Id*., ¶ 11. At the direction of Counsel, on August 19, 2024, Kroll caused 75,629 Summary Notices to be mailed via first-class mail to the Class Members whose Email Notice bounced back as undeliverable. In total, Kroll sent Summary Notice via US Mail to 324,842 Settlement Class Members. *Id*., ¶ 12.[4]

As of December 20, 2024, 1,688 Summary Notices were returned by the USPS with a forwarding address. *Id.*, ¶ 13. Of those, 1,479 Summary Notices were automatically re-mailed to the updated addresses provided by the USPS. The remaining 209 Summary Notices were re-mailed by Kroll to the updated address provided by the USPS. *Id.*

As detailed its in the Fenwick Declaration *passim* and based upon the foregoing, Kroll has reason to believe that Summary Notices likely reached 685,136 of the 703,897 persons to whom Summary Notice was emailed or mailed, which equates to a reach rate of the direct notice of approximately 97.3%. *Id*., ¶ 15. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[5] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[6]

These facts confirm that notice was distributed in a reasonable manner to all class members who would be bound by the settlement and satisfied the Constitution's Due Process requirements. *See, e.g., Boger*, 2023 WL 3763974, at *12 (approving notice where "the Settlement Administrator

---

[4] This includes the 249,213 Settlement Class Members for whom email addresses were not available as well as the 75,629 Settlement Class Members to whom email notice was sent, but bounced back as undeliverable.

[5] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[6] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010).

14

sent Notice via the United States Postal Service to 731,744 Class Members for which mailing address data was available" and "administered a settlement website and a toll-free number, through which the Class Members could obtain additional information about the Settlement"); *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 766 (D. Md. 2022) (approving notice where it "was either mailed or emailed to each class member, and the administrator also set up a dedicated website and toll-free number for class members to access or call.").

## VI. CONCLUSION

Considering the factors bearing on the fairness and adequacy of the settlement, the Court should approve the notice to class members and find that the settlement meets the standard for final approval under Rule 23(e). Plaintiffs respectfully request the Court enter the order proposed by the Parties granting final approval and certifying the Settlement Class; grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award to Plaintiffs; and enter a final judgment dismissing this case.

Date: December 30, 2024                    Respectfully submitted,

/s/ *David H. Wise*
David Hilton Wise
**WISE LAW FIRM, PLC**
10640 Page Avenue, Ste. 320
Fairfax, VA 22030
Telephone: (703) 934-6377
Fax: 703-934-6379
*dwise@wiselaw.pro*

*/s/ Gary M. Klinger*
Gary M. Klinger
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
*gklinger@milberg.com*
*dlietz@milberg.com*

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner
Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
*bbliechner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

*/s/ Benjamin F. Johns*
Benjamin F. Johns
Samantha Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge 200 Barr Harbor Drive
Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
Fax: (856) 210-9088
*bjohns@shublawyers.com*
*sholbrook@shublawyers.com*

***Co-Lead Counsel for Plaintiffs and the Class***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of December, 2024, a copy of the foregoing was served electronically through CM/ECF to all counsel of record

/s/ *David Hilton Wise*
David Hilton Wise (VSB No. 30828)
